UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PATRICIA BROOKE STOCKSCHLAEDER,

                        Plaintiff,

    -v-

ANDREW SAUL,
Commissioner of Social Security,

                        Defendant.

18-CV-1364-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13).

Plaintiff Patricia Brooke Stockschlaeder brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Stockschlaeder's motion (Dkt. No. 7) is granted, the Commissioner's motion (Dkt. No. 11) is denied, and this case is remanded.

## BACKGROUND[1]

On March 16, 2015, Stockschlaeder filed protectively an application for DIB, alleging disability as of December 20, 2014, due to carpal tunnel, right rotator cuff, and damaged ligament. (Tr. 12, 187-195, 215).[2] Her application was denied on May 22,

---

[1] The Court assumes the parties' familiarity with the record in this case.
[2] References to "Tr." are to the administrative record in this case.

2015. (Tr. 80-94, 262-265). On July 8, 2015, Stockschlaeder requested a hearing before an administrative law judge ("ALJ"). (Tr. 99). A video hearing was held before ALJ Andrew Niedrick on September 28, 2017. (Tr. 28-79). Stockschlaeder appeared from Buffalo, New York, along with her attorney. The ALJ appeared from Alexandria, Virginia. A vocational expert appeared by telephone. On October 18, 2017, the ALJ issued a decision finding Stockschaeder not disabled. (Tr. 23). That decision became final when on October 3, 2018, the Appeals Council denied her request for review. (Tr. 1-6). This action followed.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in

Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Stockschlaeder had not engaged in substantial gainful activity since December 20, 2014, her alleged onset date. (Tr. 15). At step two, the ALJ concluded that Stockschlaeder has the following severe impairments: history of remote cervical fusion, history of left brachial plexus repair, degenerative right rotator cuff tear status post-repair, degenerative disc disease and facet arthropathy of the lumber spine, status post-right carpel tunnel syndrome, and history of breast cancer status post-remote lumpectomy, radiation, and chemotherapy. (Tr. 15-17). At step three, the ALJ found that Stockschlaeder does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 17). Before proceeding to step four, the ALJ assessed Stockschlaeder's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . except she can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; cannot perform overhead bilateral reaching; and can peform frequent but not constant fingering and handling with left (non-dominant) upper extremity.

(Tr. 17). Proceeding to step four, the ALJ found that Stockschlaeder is capable of performing her past relevant work as a dental assistant. (Tr. 22). Accordingly, the ALJ concluded that Stockschlaeder is not disabled under the Act. (Tr. 23).

## IV.   Stockschlaeder's Challenges

Stockschlaeder argues, *inter alia*, that the ALJ improperly rejected the opinion of her treating physician, Dr. Richard Miller, M.D., that she has a 5-pound lifting, pushing, and pulling restriction with no constant repetitive tasks and that all tasks needed to be done at desktop level, and that the case must therefore be remanded. The Court agrees.

The "treating physician rule" "requires the ALJ to give 'controlling weight' to the opinion of a claimant's treating physician regarding 'the nature and severity of [the claimant's] impairment(s) . . . [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Piatt v. Colvin*, 80 F.Supp.3d 480, 491 (W.D.N.Y. 2015) (quoting 20 C.F.R. § 404.1527(c)(2)). "Even where a treating physician's opinion is not entitled to 'controlling weight,' it is generally entitled to 'more weight' than the opinions of non-treating and non-examining sources." *Hamm v. Colvin*, No. 16CV936(DF), 2017 WL 1322203, at *17 (S.D.N.Y. Mar. 29, 2017).

If an ALJ decides that the opinion of a treating physician is not entitled to controlling weight, he or she must determine how much weight, if any, to give it. In doing so, the ALJ must "explicitly consider" the following factors (the so-called *Burgess* factors): "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining

medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (*per curiam*) (internal quotations and citations omitted). The ALJ must give "good reasons" for the weight given to the treating physician's opinion. *Id.* at 96 (internal quotations and citations omitted). An ALJ's failure to "explicitly" apply the *Burgess* factors is a procedural error, and such error is not harmless, unless "a searching review of the record" shows that the substance of the treating physician rule was not traversed[.]" *Id.* (internal quotations and citations omitted); see also *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Merkel v. Comm'r of Soc. Sec.*, 2018 WL 6438944 *1, *5 (W.D.N.Y. Nov. 28, 2018) (the ALJ was "required to explain why he has not adopted certain medical opinions, particularly those given by a plaintiff's treating physician for important functions such as walking and standing..." where plaintiff had gone through several knee surgeries); *Chalk v. Berryhill*, No. 16-cv-6494, 2017 WL 4386811, * 11 (W.D.N.Y. Sept. 29, 2017) ("Because the ALJ failed to set forth comprehensive reasons for rejecting plaintiff's treating physicians' opinions here, the denial of benefits was not supported by substantial evidence."); *Cordero v. Colvin*, No. 1:15-cv-00845(MAT), 2016 WL 6829646, *5 (W.D.N.Y. Nov. 21, 2016)( remanded where "none of the regulatory factors support a decision not to afford controlling weight to [treating physician]."). *Goldthrite v. Astrue*, 535 F.Supp.2d 329, 336 (W.D.N.Y. 2008) (remanded where the ALJ rejected the treating physician's opinion and gave "greater weight to a consultative exam... that gave no specific description of the Plaintiff's functional limitations other than 'mild restriction.'").

Here, the ALJ rejected the treating physician's opinion that Stockschlaeder should be limited to a 5-pound lifting restriction, and instead found that Stockschlaeder can

perform light work, which requires that the she be able to lift and carry 20 pounds occasionally and 10 pounds frequently. (Tr. 17). In doing so, the ALJ did not expressly consider the *Burgess* factors, thereby committing procedural error. For example, he did not address the fact that Dr. Miller is an orthopedic surgeon, who has been treating Stockschlaeder since 2014 and performed both of her surgeries. Instead, he stated only that he was giving the treating physician's opinion partial weight because "it is out of proportion to the physical examination findings, the type and degree of treatment needed, and the claimant's own description of her activities." (Tr. 21). These reasons, however, are conclusory in nature, and do not meet the requirement of providing "good reasons" for rejecting the treating physician's opinion. "The plaintiff here is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006); see also *Younes v. Colvin*, No. 1:14–CV–170 (DNH/ESH), 2015 WL 1524417, *28, *29 (N.D.N.Y. Apr. 2, 2015) (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently.").

In rejecting the treating physician's opinion, the ALJ did state that "[a]lthough deficits in range of motion are noted in the file, there is limited information suggesting significant deficits in motor strength with no apparent treatment for right arm issues in the last year." (Tr. 21). This, however, is a mischaracterization of the record. The record is replete with evidence of decreased motor strength. (Tr. 328, 367, 469, 667, 733).

Further, the record is clear that Stockschlaeder suffers from an irreparable rotator cuff tear for which there is no treatment. (Tr. 302, 308); see *Soto-Rivera v. Comm'r of Soc. Sec.*, No. 17-cv-6675-JWF, 2019 WL 2718236, *5 (W.D.N.Y. June 28, 2019) ("An ALJ is not a medical doctor who is competent to decide whether a particular form of treatment is aggressive or minimal, significant or inconsequential. Thus, an ALJ's efforts to minimize a claim of disability because the claimant's treating doctor 'only' recommended a particular type of treatment is improper unless there is evidence in the record to support the ALJ's characterization of the medical significance of the prescribed treatment."). In fact, Stockschlaeder's most recent examination showed weakness and crepitance from the chronic cuff tear. (Tr. 749). The ALJ's mischaracterization of the record makes it impossible for the Court to determine whether there is substantial evidence to support his rejection of Dr. Miller's opinion. See *Collins v. Berryhill*, No. 17-cv-467, 2019 WL 2287787, *4 (W.D.N.Y. May 28, 2019) (citations omitted).

"If the ALJ suspected that [the treating physician's] examination findings did not support his opinion, the ALJ was required at the very least to contact [the treating physician] in this regard." *Id.*; see also *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'").

In sum, the Court finds that the ALJ improperly rejected the medical opinion of the treating physician. The ALJ did not expressly consider the *Burgess* factors and did not provide good reasons for not giving such opinion controlling weight. Further, after a

searching review of the record, the Court cannot say that the treating physician rule was not traversed in this case. The case must therefore be remanded.[3]

## CONCLUSION

For the reasons stated, Stockschlaeder's motion for judgment on the pleadings (Dkt. No. 7) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is denied, and this case is remanded.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   May 20, 2020
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge

---

[3] Stockschlaeder raises two additional arguments: (1) the ALJ's RFC finding is not supported by substantial evidence as he relied on his own lay opinion; and (2) the ALJ made an erroneous credibility finding. Because the Court is remanding the case for a proper application of the treating physician rule, these issues should be considered on remand as well.